**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JUSTIN BLAKE HUTCHISON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-22-234-STE** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. _____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

I.      **PROCEDURAL BACKGROUND**

On March 26, 2018, Plaintiff filed two applications for Social Security benefits—one for Supplemental Security Income and one for Disability Insurance Benefits. *See* TR. 281-

290.[1] Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 13-21). The Appeals Council denied Plaintiff's request for review and he appealed to this Court. *See* TR. 1-3; *see also* ECF No. 1, *Hutchison v. Saul*, Case No. CIV-20-554-SM (W.D. Okla. June 11, 2020).  Following an unopposed remand,[2] a second administrative hearing was held, followed by a second unfavorable administrative decision. *See* TR. 629-647, 655-687. The Appeals Council denied Plaintiff's request for review of that decision, rendering it the final decision of the Commissioner.

## II.    THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 11, 2018, his alleged onset date. (TR. 631). At step two, the ALJ determined Mr. Hutchison suffered from "severe": intermittent oculomotor disorder; a learning disorder in math; and major depressive disorder. (TR. 632). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 632).

---

[1] On October 2, 2018, Mr. Hutchison also applied for child's insurance benefits, but that application is not at issue before the Court. *See* ECF No. 20:1.

[2] *See* TR. 688-689.

At step four, the ALJ concluded, in part, that Mr. Hutchison retained the residual

functional capacity (RFC) to

> [P]erform a full range of work at all exertional levels but with the following
> non-exertional limitations: he is able to perform a job that does not require
> peripheral vision or where tasks performed require eye-tracking. The job
> should not involve work performed on an assembly line where items may
> present from the right or from the left. He is able to understand, remember,
> and perform simple tasks that are learned by rote. He is able to sustain
> attention and concentration for up to two hours at a time when performing
> simple tasks that are learned by rote. He is able to sustain the mental
> demands associated with performing simple tasks that are learned by rote.
> He is able to interact with supervisors as needed to receive work
> instructions. Supervision should be clear and concrete. He is able to work
> in proximity to co-workers, but the job should not involve teamwork or other
> work where close communication, or cooperation is needed in order to
> complete work tasks. He is able to interact with the general public if needed
> to refer a member of the public to a supervisor or co-worker for assistance,
> but the job should not involve customer service or other work where
> interacting with the general public is an essential function of the job. The
> job should not require more than simple math. The job should not involve
> work tasks that are performed at a rapid production rate pace. The job
> should not involve operating a motor vehicle or heavy equipment.

(TR. 638).

With this RFC, the ALJ concluded that Plaintiff was not capable of performing his

past relevant work. (TR. 645). As a result, the ALJ presented the RFC limitations to a

vocational expert (VE) to determine whether there were other jobs in the national

economy that Plaintiff could perform. (TR. 682-683). Given the limitations, the VE

identified three jobs from the Dictionary of Occupational Titles that Plaintiff could perform.

(TR. 684). The ALJ then adopted the VE's testimony and concluded, at step five, that that

Mr. Hutchison was not disabled based on his ability to perform the identified jobs. (TR.

647).

III.   **ISSUES PRESENTED**

On appeal, Plaintiff alleges: (1) a lack of substantial evidence to support the RFC and (2) a lack of substantial evidence to support the ALJ's evaluation of Plaintiff's subjective allegations. (ECF No. 20:9-16).

IV.   **STANDARD OF REVIEW**

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

V.   **THE RFC WAS SUPPORTED BY SUSBTANTIAL EVIDENCE**

As stated, as part of the RFC, the ALJ concluded that Mr. Hutchison was able to "perform a job that does not require peripheral vision or where tasks performed require

4

eye-tracking." (TR. 638). Plaintiff contends that this portion of the RFC lacks substantial

evidence because Plaintiff's physician, Dr. Bradley Farris, stated that Plaintiff "has

difficulty with lateral gaze, right, left, up, or down due to his inability to move his eyes

normally." *See* ECF No. 20:9-12; TR. 524. Plaintiff is wrong.

In the administrative decision, the ALJ acknowledged this portion of Dr. Farris'

opinion and found it persuasive. *See* TR. 640, 645. Even so, Plaintiff contends that the

RFC lacks substantial evidence, arguing:

> The ALJ's RFC only restricts the plaintiff's eye impairments to restricted
> peripheral vision. On the other hand, Dr. Farris notes the Plaintiff is also
> restricted to up and down vision. The ALJ's [RFC] did not include the
> important up and down portion of his vision impairments. The vocational
> expert witness noted that peripheral vision was vision to the side and
> answered accordingly. . . . By failing to consider up and down vision the
> ALJ's determination was not based on substantial evidence.

(ECF No. 20:11).

The Court finds that Plaintiff's argument is undermined by his own testimony. At

the hearing, the ALJ questioned Mr. Hutchison extensively about his oculomotor apraxia.[3]

According to Plaintiff, he was born with this condition, and it causes difficulty when he

moves his eyes side to side. (TR. 670, 672). Plaintiff described the issue as his eyes

"sticking" when he moved them side to side, but he specifically stated that he has no

---

[3] Ocular motor apraxia (OMA) is a neurological disorder that causes problems with voluntary horizontal eye movement. Children with this condition have difficulty moving their eyes in a desired direction. In other words, their saccades (the quick, simultaneous movement of both eyes in the same direction) are abnormal. Because of this, patients with OMA have to turn their head quickly in order to start following objects in side gaze. They often thrust their head well past the object of interest and once the object is in view, then their head will return to its normal position. Head thrusts can be seen in early infancy but may not be appreciated until 6 months old. Typically, up and down (vertical) eye movements are unaffected. *See* Oculomotor Apraxia - American Association for Pediatric Ophthalmology and Strabismus (aapos.org) (last visited May 26, 2023).

problem moving his eyes up and down, and that with such motion, his eyes do not "stick." (TR. 672). Even though Dr. Farris stated that Plaintiff had "difficulty" with "up and down movement" of his eyes, Plaintiff's own testimony is that he has no such difficulty. *See* TR. 672. As a result, the Court finds that the RFC, which did not make any particular accommodation for "up and down vision" was supported by substantial evidence. *See Emilee W. v. Kijakazi*, No. 1:21-cv-02092-EFM, 2022 WL 17338278, at *10 (D. Kan. Nov. 30, 2022) ("Substantial evidence supports the ALJ's finding as to Plaintiff's RFC, . . . which [wa]s based solely on Plaintiff's testimony[.]").

In conjunction with this issue, Plaintiff also argues that the hypothetical to the VE "further compounded" the ALJ's error to accommodate "up and down vision" issues by "failing to consider the up and down vision and the fact that Plaintiff would require unscheduled work breaks to shake or hit his head and then rest when his eyes become unstuck." (ECF No. 20:12). But by Plaintiff's own testimony, he only required such breaks when his eyes became stuck as a result of moving them side to side. (TR. 672-676). Because the ALJ eliminated any work which would require peripheral vision or eye-tracking, or jobs that involved work performed on an assembly line where items may present from the right or left,[4] Plaintiff's needs for unscheduled breaks was not necessary to be included in the hypothetical. *See Decker v. Chater,* 86 F.3d 953, 955 (10th Cir.1996) (noting that the hypothetical questions "need only reflect impairments and limitations ... borne out by the evidentiary record."). This point of error is denied.

---

[4] *See supra*.

## V.    THE ALJ'S CONSISTENCY ANALYSIS WAS SUPPORTED BY SUSBTANTIAL EVIDENCE

The entirety of Plaintiff's case revolves around his impairment involving oculomotor apraxia—which, as explained, causes his eyes to "stick" when he moves them side to side. Plaintiff testified regarding this issue[5] and his second allegation of error, he alleges that the ALJ erred in evaluating his subjective allegations, rendering the analysis lacking in substantial evidence. (ECF No. 20:12-15). The Court disagrees.

### A.    ALJ's Duty to Evaluate Plaintiff's Subjective Allegations

Social Security Ruling 16-3p provides a two-step framework for the ALJ to evaluate a claimant's subjective allegations. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). First, the ALJ must make a threshold determination regarding "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.*, at *2. Second, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit an individual's ability to perform work-related activities. *Id.* At this second step, the ALJ will examine the objective medical evidence, the claimant's statements regarding his symptoms, information from medical sources, and "any other relevant evidence" in the record. *Id.*, at *4. SSR 16-3p also directs the ALJ to consider the following seven factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms:

- Daily activities;

- The location, duration, frequency, and intensity of pain or other symptoms;

---

[5] *See* TR. 661-680.

- Factors that precipitate and aggravate the symptoms;

- The type, dosage, effectiveness, and side effects of any medication;

- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

- Any measures other than treatment a claimant has used to relieve pain or other symptoms; and

- Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, at *7. Finally, in evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. *Id.*, at *9.

**B.    No Error in the ALJ's Evaluation of Plaintiff's Subjective Allegations**

At the administrative hearing, the entirety of Mr. Hutchison's testimony concerned his "eye sticking" and how it affected him. Plaintiff testified that the never knows when his eyes might stick, it just depended on what he was doing. (TR. 664). He stated that his eyes might get stuck 4-5 times daily, which occurred randomly and without warning. (TR. 664). Plaintiff stated his condition caused him difficulty in school with being able to focus on the board and he was placed in special education classes, and now, it causes him difficulty with not being able to look at a computer for very long or drive over 1-2 blocks from his home. (TR. 670-671, 679-680). As discussed, Plaintiff stated that the eye sticking only occurred when he moved his eyes from left to right, horizontally, but not when he moved his eyes vertically, or up and down. (TR. 672). To get his eyes to reset,

Plaintiff stated that he would shake or beat his head, which was followed by a period of rest for 10-15 minutes. (TR. 673-674).

In formulating the RFC, the ALJ stated that he had considered Plaintiff's symptoms and the consistency of his subjective allegations with other evidence of record. (TR. 639). The ALJ then: (1) set forth the two-step framework under SSR 16-3p, (2) summarized Plaintiff's functions reports, disability reports, and hearing testimony as listed above, and stated:

> [T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(TR. 639). The ALJ then set forth a 7-page, single-spaced summary of Plaintiff's medical records which included references to Plaintiff's eye condition, depression, and cognition. (TR. 639-645).

Mr. Hutchison challenges the ALJ's evaluation of Plaintiff's subjective allegations, arguing that the ALJ made conclusory findings and failed to consider the various factors set forth in SSR 16-3p. (ECF No. 20:14-15). The problem with Plaintiff's argument, however, is that despite the ALJ's seemingly boilerplate statement that Mr. Hutchison's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence," the ALJ actually completely credited Plaintiff's subjective allegations as reflected in the RFC determination which:

- Disallowed any work that used peripheral vision or required "eye-tracking;"
- Disallowed work that would require operating a motor vehicle;

9

- Disallowed work involving more than simple math;

- Limited work involving the ability to understand, remember, and perform simple tasks that are learned by rote;

- Allowed for work requiring the ability to only sustain attention and concentration for two hours;

- Allowed for work involving clear and concrete supervision and interaction with the general public only to the extent it involved referring a member of the public to a supervisor; and

- Disallowed work involving teamwork or close communication or cooperation with others.

(TR. 638).

In the RFC context, "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). This principle is analogous in the instant case. Although the ALJ might have given a more formal analysis, considering how each of the factors in SSR 16-3p applied to Plaintiff's case, no such analysis was needed because the ALJ credited the Plaintiff's allegations and accommodated them accordingly in the RFC. The ALJ thoroughly discussed the entirety of Plaintiff's medical history including his subjective allegations in function reports and at the hearing. As a result, the Court concludes that it is able to follow the ALJ's reasoning and further analysis was unnecessary. Furthermore, Mr. Hutchison fails to argue what, specifically, the ALJ failed to discuss or how any of the factors applied to his case or should have been evaluated in his favor. Accordingly, the Court rejects Plaintiff's second allegation of error and affirms the ALJ's evaluation of Mr. Hutchison's subjective allegations.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on June 9, 2023.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE